O

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RAYMOND G. LEE, | ) | NO. EDCV 07-0935-MAN |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| v. | ) | |
| | ) | AND ORDER |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff filed a Complaint on August 9, 2007, seeking review of the denial by the Social Security Commissioner ("Commissioner") of plaintiff's applications for disability insurance benefits ("DIB"), and supplemental security income ("SSI"). On August 28, 2007, the parties consented to proceed before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The parties filed a Joint Stipulation on June 24, 2008, in which: plaintiff seeks an order reversing the Commissioner's decision and awarding benefits or, in the alternative, remanding the matter for further administrative proceedings; and defendant seeks an order affirming the Commissioner's decision. The Court has taken the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed his applications for DIB and SSI on February 21, 2002. (Administrative Record ("A.R.") 54-56, 146-48.) Plaintiff alleges an inability to work since January 31, 2001, due to hearing loss, vision loss in one eye, and mood swings. (A.R. 12, 60, 146.) He has past relevant work experience as a cook, cleaner, apprentice mill operator, and machine operator trainee. (A.R. 12, 61, 67.)

Plaintiff's claims were denied initially and upon reconsideration, and on January 15, 2004, plaintiff, who was represented by counsel, testified at a hearing before Administrative Law Judge Mason D. Harrell Jr. ("ALJ"). (A.R. 23-26, 29-33, 149, 154, 163-212.) On February 4, 2004, the ALJ denied plaintiff's claims, and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision. (A.R. 4-6, 11-18.)

On June 30, 2004, plaintiff filed a Complaint in this Court in Case No. EDCV 04-753-MAN. On March 24, 2006, this Court reversed the ALJ's decision and remanded the case for further administrative proceedings (the "2006 Order").[1] (A.R. 240-59.) On May 4, 2006, the Appeals Council remanded the case to the ALJ for compliance with the 2006 Order. (A.R. 237-39.)

---

[1] The 2006 Order directed a remand for two reasons: first, the ALJ failed to provide specific and germane reasons for rejecting the testimony of plaintiff's mother regarding plaintiff's mental limitations; and second, the ALJ failed to develop the record regarding plaintiff's mental health. (A.R. 245-58.)

On February 1, 2007, and April 26, 2007, plaintiff, who was represented by counsel, testified at supplemental hearings before the same ALJ.   (A.R. 325-69.)   On May 15, 2007, the ALJ again denied plaintiff's claims in the decision now at issue in this action.   (A.R. 215-22.)

### SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that plaintiff has the following severe impairments: bilateral tympanosclerosis with bilateral sensori-neural hearing loss; attention deficit hyperactivity disorder with low average to average intellectual functioning; circumscribed borderline verbal intellectual functioning; personality disorder not otherwise specified; chronic adjustment disorder with anxiety features; and extreme uncorrectable loss of vision in the right eye.   (A.R. 218.)

Based on the medical evidence and testimony of a medical expert, the ALJ found that plaintiff has:

> never had any medically determinable exertional limitations
> and that he has, and never lost for any significant period of
> time, the residual functional capacity to understand,
> remember, and carry out moderately complex, four to five step,
> instructions in an object oriented work setting allowing face-
> to-face instruction, habituated tasks, no variability in
> problem solving or routine on a regular basis, no
> responsibility for hypervigilance in the context of safety
> operations, only occasional changes in work setting, use of a

3

hearing aide [*sic*], talking to [plaintiff] in a louder than normal level, and no constant communication with others.

(A.R. 219-20.)

The ALJ rejected the testimony of plaintiff's mother and sister regarding plaintiff's mental limitations, finding that "it is still apparent that [plaintiff's] mother has had limited contact with [plaintiff]," and plaintiff's sister's testimony at the 2007 hearing was "quite inconsistent with the treating source finding of improvement since October 2006 or the fact that [plaintiff] was able to maintain regular full time employment for over a year with minimal assistance involving his being woken up and encouraged to go to work from 2004 to 2006." (A.R. 221.) The ALJ further determined that he could not credit the testimony of plaintiff's mother and sister, "especially given the financial motivation of [plaintiff's] mother and sister to have the burden of supporting [plaintiff] alleviated by his becoming eligible for disability benefits." (A.R. 221-22.)

Based on plaintiff's residual functional capacity and the testimony of a vocational expert, the ALJ found that plaintiff cannot perform his past work as a machinist[2], but is able to perform his past relevant work as a cleaner. (A.R. 219, 222.) Accordingly, the ALJ concluded that

---

[2]  At the hearing on remand, plaintiff admitted that he returned to work as a "machinist" shortly after the January 2004 hearing and continued to work full-time until four months prior to the February 2007 hearing. (A.R. 217.) The ALJ noted there was a question about whether plaintiff's past work as a "machinist" constituted "substantial gainful activity," but concluded that the issue need not be resolved in light of his other findings, as discussed *infra*. (A.R. 217-18.)

plaintiff has not been under a disability, as defined in the Social Security Act, from January 31, 2001, through the date of his decision. (A.R. 222.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003)(citation omitted). While inferences from the record can constitute substantial evidence, only those "'reasonably drawn from the record'" will suffice. Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

1    The Court will uphold the Commissioner's decision when the evidence
2    is susceptible to more than one rational interpretation.   Burch v.
3    Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).   However, the Court may
4    review only the reasons stated by the ALJ in his decision "and may not
5    affirm the ALJ on a ground upon which he did not rely."   Orn, 495 F.3d
6    at 630; see also Connett, 340 F.3d at 874.   The Court will not reverse
7    the Commissioner's decision if it is based on harmless error, which
8    exists only when it is "clear from the record that an ALJ's error was
9    'inconsequential to the ultimate nondisability determination.'"   Robbins
10   v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(quoting Stout v.
11   Comm'r, 454 F.3d 1050, 1055-56 (9th Cir. 2006)); see also Burch, 400
12   F.3d at 679.

13
14                            **DISCUSSION**
15
16        Plaintiff alleges the following issues:  (1) whether the ALJ made
17   proper credibility findings regarding plaintiff's mother's testimony;
18   (2) whether the ALJ properly evaluated the credibility of plaintiff's
19   sister; (3) whether the ALJ properly described the physical and mental
20   demands of plaintiff's past relevant work as actually performed; and (4)
21   whether the ALJ gave controlling weight to the combined findings of
22   plaintiff's treating and examining physicians.  (Joint Stipulation
23   ("J.S.") at 3.)

24
25   **I.    The ALJ's Rejection Of The Testimony Of Plaintiff's Mother And**
26           **Sister Does Not Warrant Reversal.**
27
28        "Lay testimony as to a claimant's symptoms is competent evidence

                                    6

that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); see also Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).  An ALJ may "properly discount lay testimony that conflict[s] with the available medical evidence" (Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984)), particularly where, as in Vincent, "lay witnesses [are] making medical *diagnoses*," because "[s]uch medical diagnoses are beyond the competence of lay witnesses and therefore do not constitute competent evidence" (Nguyen, 100 F.3d at 1467; original emphasis).  When, however, a lay witness testifies about a claimant's *symptoms*, which may affect the claimant's ability to work, such testimony *is* competent evidence and, therefore, cannot be disregarded without comment.  *Id*.

Plaintiff contends that the ALJ improperly discounted the testimony of plaintiff's mother and sister.  (J.S. at 3, 7.)  For the following reasons, the Court disagrees.

In rejecting the testimony of plaintiff's mother and sister, the ALJ stated:

it is still apparent that [plaintiff's] mother has had limited contact with [plaintiff] and that [plaintiff's mother and sister] were both emphasizing how easily [plaintiff] is upset and loses his temper[,] as well as what they consider to be paranoid behavior.  The treating source records however indicate that they have considered [plaintiff's] personal

7

problems to be of moderate severity and that [plaintiff's] condition has improved significantly since September 2006 when treatment was finally initiated. Furthermore, the recent testimony[,] especially that in April 2007[,] is quite inconsistent with the treating source finding of improvement since October 2006 or the fact that [plaintiff] was able to maintain regular full time employment for over a year with minimal assistance involving his being woken up and encouraged to go to work from 2004 to 2006. While [plaintiff] may [have] had a crisis in 2002 related to the death of his father, the evidence of record does not credibly establish it was of extended duration or that he was unable to work within the range of the residual functional capacity for any significant period [of] time, especially given the financial motivation of [plaintiff's] mother and sister to have the burden of supporting [plaintiff] alleviated by his becoming eligible for disability benefits. Accordingly, I cannot credit their allegations beyond the limits found herein above.

(A.R. 221-22.)


At the February 1, 2007 hearing, plaintiff's mother testified that she "do[es] not see [plaintiff] that often, but . . . [she] witnessed things in the past when [she] was around him more." (A.R. 338.) For example, she testified that plaintiff is easily irritable and fails to "take responsibility for his own problems [and] [t]hey're always somebody else's fault that causes his problems." (*Id.*) Plaintiff's mother did not testify any further, as the ALJ stated that he "d[id]n't

8

want to hear the same testimony" as was elicited at the last hearing in 2004.[3]  (A.R. 339.)

Plaintiff's sister did not testify at the 2004 hearing but, in February 2007, testified that plaintiff "has a problem with being dependable" and "is not able to work" and "he's dependent on family to make sure he gets to where he needs to be going to in a reasonable

---

[3]   A summary of plaintiff's mother's testimony at the 2004 hearing was accurately set forth in the ALJ's prior decision, and incorporated by reference in the instant decision, as follows:

> [Plaintiff's] mother testified, she did not live with [plaintiff] and had not lived with [plaintiff] for some time except for a six to seven month period two years ago.  She described her contact with [plaintiff] as consisting of telephone conversations and e-mail messages.  She said that [plaintiff's] mental problems involved sleeping all day, not responding to letters, ignoring bills, and severe mood swings, saying that he would be happy one minutes [*sic*] and violent the next.  She emphasized that he had tried to kill her by choking her while she was caring for his father and that when he would get a job he would last only hours or a day, that he could not handle any stress, and that he had high levels of anxiety.  She said that [plaintiff's] father had made sure [plaintiff] got up and got to work and talked to his employers to help [plaintiff].  She stressed that [plaintiff] did not function well at work, could not get along with others on a job, and could not handle the stress of changing duties at work.
>
> [Plaintiff's] mother also emphasized that she had made appointments for [plaintiff] to get psychiatric help, but he would not go to them and that she had taken [plaintiff] to three appointments with the Department of Rehabilitation, but he would not go again.
>
> [Plaintiff's] mother also testified that [plaintiff] was living with his sister, who is age 37, but was going to move and that when [plaintiff] had tried to live alone, they had found him sitting in his room alone.  She admitted that he did drive, but said that he did not go to church regularly, about once a month, with long periods of nonattendance.  She also said that he had no friends and that he talked critically of others.

(A.R. 15-16.)

time." (A.R. 336.) She further testified that plaintiff continues to have "problems with anger" and "concentrating." (A.R. 336-37.)

Plaintiff concedes that his mother "does not live with him and doesn't see him that often." (J.S. at 4; A.R. 171, 338.) Plaintiff's mother testified that she lives in the State of Washington and could not "see [plaintiff] on a day-to-day basis even if [she] wanted to." (A.R. 180.) As it is undisputed that plaintiff's mother was not in a position to observe plaintiff on a regular basis, the ALJ rightly accorded her testimony less weight than would be accorded to the testimony of a person who had the ability to observe plaintiff more regularly. Thus, plaintiff's mother's testimony regarding plaintiff's subjective limitations is of limited probative value and was properly discounted by the ALJ. *See* Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)(friends and family members in a position to observe a plaintiff's symptoms and daily activities are competent to testify as to his condition).

The ALJ also was entitled to disregard plaintiff's mother's statements that plaintiff has a "psychiatric problem" and exhibits "paranoid behavior." (A.R. 221, 338.) Such statements are medical diagnoses, not lay observations about "a claimant's symptoms or how an impairment affects a claimant's ability to work" and, thus, do not constitute competent evidence that the ALJ was required to consider. Nguyen, 100 F.3d at 1467 (medical diagnoses are beyond the competence of lay witnesses and, therefore, do not constitute competent evidence).

While plaintiff's sister is in a position to observe plaintiff's

10

symptoms regularly (as she and plaintiff live together), the ALJ gave "germane" reasons for rejecting her testimony.  Specifically, the ALJ noted that her testimony was inconsistent with other probative evidence in the record, including plaintiff's own work history and the recent treating source reports.  (A.R. 221.)  *See, e.g.,* <u>Vincent</u>, 739 F.2d at 1395 (ALJ may discount lay witness testimony that conflicts with the evidence of record); *see also* <u>Jones v. Apfel</u>, 2000 WL 1456907, *17 (D. Or. 2000)(conflict with vocational evidence constitutes a germane reason for discounting lay testimony).  While plaintiff's sister testified that plaintiff is "not able to work" because of his "problem with being dependable," the evidence of record indicates that plaintiff was able to maintain regular, full-time employment for over a year, as he returned to work shortly after the January 2004 hearing and continued working at the same job until four months prior to the February 2007 hearing. (A.R. 217, 328, 336.)

Moreover, in the most recent treating source records, plaintiff's treating psychiatrist, Imelda Alfonso, M.D., reported that, from December 6, 2006, through March 22, 2007, there were "[n]o episodes of agitation or angry outbursts reported," and plaintiff reported he was "stabilizing on medication."  (A.R. 283-84, 314-315.)  By contrast, plaintiff's sister testified that plaintiff continues to have "problems with anger," and when "things don't go quite his way or something was said to upset him, . . . he will have a tantrum, so to speak." (A.R. 336.)[4]

---

[4]   While there is some evidence that plaintiff tends to lose his temper, the evidence does not support a finding of a disabling degree of functional limitation in this particular area.  However, and

1      Finally, plaintiff criticizes the ALJ's rejection of plaintiff's
2 mother's and sister's testimony based on their "financial motivation
3 . . . to have the burden of supporting [plaintiff] alleviated by his
4 becoming eligible for disability benefits," arguing that the ALJ's
5 discounting of their testimony on this basis rests "solely on ephemeral
6 speculation [and] does not satisfy the 'germane' requirement for
7 rejection of lay witness testimony." (J.S. at 4-5; A.R. 222.)   An
8 unsupported allegation regarding a lay witness's financial motivation to
9 have a claimant obtain benefits would not constitute an appropriate
10 reason to discount his or her testimony.   However, in this case, the
11 evidence of record supports the ALJ's contention.   Specifically,
12 examining psychiatrist, Robert Dobrin, M.D., states, in his October 29,
13 2002 report, that "[plaintiff's] mother seeks evaluation for Raymond to
14 determine if he qualifies for social security.   She has been helping him
15 financially but cannot afford to continue." (A.R. 104.)   In addition,
16 at the 2004 hearing, plaintiff's mother testified that she and her
17 husband "have been paying utilities, buy[ing] [plaintiff's] clothes and
18 his sister helps with the food." (A.R. 181.)   She further testified
19 that plaintiff would be "on the streets," if she and her husband
20 "weren't paying for things." (A.R. 177.)   One of plaintiff's treating
21 psychologists, Jon Held, Psy.D, also notes, in a September 26, 2006
22 clinical assessment form, that plaintiff is "unable to provide for own
23

24 notwithstanding the ALJ's proper rejection of plaintiff's sister's
testimony regarding plaintiff's anger outbursts and alleged inability to
25 work that was inconsistent with the evidence of record, her testimony
regarding plaintiff's problems with concentration was essentially
26 credited by the ALJ as it is consistent with the medical evidence and
reflected in the ALJ's residual functional capacity finding that
27 plaintiff is limited to "habituated tasks," and "no variability in
problem solving or routine on a regular basis." (A.R. 219-20, 336-37,
28 367-68.)

need for food/shelter," and "[s]ister is supportive." (A.R. 321-22.)
At the 2004 hearing, the ALJ inquired of plaintiff, "The money, the food
you eat, how do you go to the store and pay for that?" Plaintiff
replied, "My sister takes care of that." (A.R. 203.) Further, at the
February 2007 hearing, plaintiff's sister testified that plaintiff has
been living with her for four and a half years, and because plaintiff
"is not able to work, he's dependent on . . . the family to help him."
(A.R. 336.)

     Thus, the ALJ's findings regarding the testimony of plaintiff's
mother and sister is not "based solely on ephemeral speculation" but is
supported by substantial evidence in accordance with the governing legal
standards.   In this case, the ALJ's reasons for rejecting the lay
testimony of plaintiff's mother and sister are appropriate.
Accordingly, his findings in this regard are affirmed.

**II.  <u>To Determine The Extent To Which Plaintiff Has Medically Improved,
      The Record Must Be Further Developed Regarding The Opinions Of
      Plaintiff's Treating Psychiatrists And Psychologist</u>.**[5]

     Generally, a treating physician's opinion is given greater weight
because "'he is employed to cure and has a greater opportunity to know
and observe the patient as an individual.'" <u>Magallanes v. Brown</u>, 881

---

[5]   Plaintiff argues (plaintiff's fourth issue) that proper weight was
not accorded to plaintiff's treating and examining physicians, and that
"the ALJ has not provided specific legitimate reasons for rejection of
the opinions of [p]laintiff's treating physicians."   (J.S. at 14-16,
17.)   In fact, the ALJ did not *per se* reject the opinions of plaintiff's
treating mental health professionals, but the ALJ partially relied on
their opinions in making his ultimate disability determination.   (A.R.
218, 221.)

F.2d 747, 751 (9th Cir. 1989)(citation omitted).  When the opinion of a treating physician is contradicted, it may be rejected by the ALJ only for "specific and legitimate" reasons, based on substantial evidence in the record.  *Id.*  "Opinions of a non-examining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it."  Morgan v. Apfel, 169 F.3d 595, 600 (9th Cir. 1999)(citation omitted).

The Commissioner has an affirmative duty to develop the record, even if the claimant is represented by counsel.  Brown v. Heckler, 713 F.2d 441, 442-43 (9th Cir. 1993); *see* 20 C.F.R. §§ 404.1512(e), 416.912(e)(requiring that an ALJ re-contact a medical source "when the report from [the] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques"); *see also, e.g.,* 20 C.F.R. §§ 404.1519a(b), 416.919a(b) (listing situations requiring a consultative examination, such as a conflict, inconsistency, ambiguity or insufficiency in the evidence); 20 C.F.R. §§ 404.1517, 416.917 (when a claimant's medical sources do not give sufficient medical evidence about an impairment in order to determine whether the claimant is disabled, a consultative examination may be ordered).  In cases involving mental impairments, the duty to develop the record is heightened, "'[b]ecause mentally ill persons may not be capable of protecting themselves from possible loss of benefits by furnishing necessary evidence.'"  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991)(quoting from Social Security Ruling 83-20).

14

In his written decision, the ALJ primarily relied on the opinion of the medical expert, Joseph Malancharuvil, Ph.D., in determining the severity of plaintiff's impairments and in assessing plaintiff's residual functional capacity.  To support the unfavorable disability determination, the ALJ also relied on plaintiff's treating psychiatrist's "finding of improvement since October 2006," and the asserted fact that plaintiff was "stabilizing with medication." (A.R. 221, 218-19.)

After carefully reviewing the record, the Court finds that the extent to which plaintiff has improved is still unclear, and the opinion of plaintiff's primary treating psychiatrist, Dr. Alfonso, appears to be internally inconsistent and ambiguous.

In February 2007, plaintiff testified that he began seeing Dr. Alfonso monthly beginning in September 2006, at which time plaintiff started taking medication for his mood swings.[6]  (A.R. 221, 340.) Plaintiff testified that the medication helps control his mood swings (A.R. 340-41), and Dr. Alfonso's treatment notes indicate that, at least as of October 2006, plaintiff's condition was improving.  Every month from October 2006, through March 2007, Drs. Alfonso and Devera reported

---

[6]    In fact, the record indicates that, on September 26, 2006, plaintiff initiated treatment with Dr. Held, who assessed plaintiff with a Global Assessment of Functioning ("GAF") of 47.  On September 28, 2006, plaintiff was treated by Han V. Nguyen, M.D., who assessed plaintiff with a GAF of 48.  On October 29, 2006, plaintiff was treated by Jesse Devera, M.D., who reported that, with medication, plaintiff's "anger problem is better."    Once a month from November 1, 2006, to March 22, 2007, plaintiff has seen Dr. Alfonso, who consistently reported that plaintiff is improving and stabilizing, and assessed plaintiff with a GAF of 48.    These doctors all appear to have been employed at the San Bernardino County Department of Behavioral Health. (*See, e.g.,* A.R. 262-65, 282-86, 288-89, 314-24.)

plaintiff was "stabilizing on medication," and that plaintiff "feel[s] better on the medication," is "less depressed," is "doing better," and is having "[n]o episodes of agitation or angry outbursts."  (A.R. 283-86, 314-15.)  However, despite such reports of improvement, on November 1, 2006, Dr. Alfonso opined that plaintiff's mental impairments were of "moderate" severity, and on January 24, 2007, he opined that plaintiff's impairments were of "marked" severity, which indicates that plaintiff's condition worsened, rather than improved, in that roughly three month period.[7]  (A.R. 288-89, 316.)  Furthermore, Dr. Alfonso's treatment notes of medical improvement in plaintiff's condition appear to be at odds with plaintiff's November 1, 2006 GAF score of 48, which indicates that plaintiff continued to have "serious symptoms" that could affect his ability to engage in and maintain full-time work.[8]

---

[7]   On January 24, 2007, Dr. Alfonso completed a Work Capacity Evaluation (Mental) Form in which he opined that plaintiff continued to have "marked" limitations in 16 of 16 functional areas. (A.R. 288-89.) According to this form, "marked" is defined as "severely limited but not precluded." (*Id.*)  The 16 functional areas involve the ability to: (1) remember locations and work-like procedures; (2) understand and remember very short and simple instructions; (3) carry out very short and simple instructions; (4) maintain attention and concentration for extended periods; (5) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (6) sustain an ordinary routine without special supervision; (7) work in coordination with or in proximity to others without being distracted by them; (8) make simple work-related decisions; (9) interact appropriately with the general public; (10) ask simple questions or request assistance; (11) accept instructions and respond appropriately to criticism from supervisors; (12) get along with co-workers or peers without distracting them or exhibiting behavioral extremes; (13) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; (14) respond appropriately to changes in the work setting; (15) be aware of normal hazards and take appropriate precautions; (16) set realistic goals or make plans independently of others. (*Id.*)

[8]   A GAF of 41-50 indicates "serious  symptoms (*e.g.*, suicidal ideation, severe obsessive rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., few friends, unable to keep a job)."  Diagnostic and Statistical Manual of Mental Disorders Text Revision, 34 (4th ed. 2000).

16

The aforementioned inconsistencies create an ambiguity as to plaintiff's mental health status that triggered the ALJ's duty to develop the record further.  Accordingly, this matter must be remanded to allow the ALJ to re-contact plaintiff's treating mental health professionals for clarification of their opinions and, if necessary, to permit plaintiff to be examined by a consultative psychiatrist to determine the extent to which plaintiff's mental impairments actually have improved since he began taking mood stabilizing medication.[9]  Based on the record before the Court, it is not clear whether, even if plaintiff has been improving and stabilizing with proper medication, his impairments are disabling.

**III. <u>Until The Record Has Been Further Developed, The Court Cannot Assess The Propriety Of The ALJ's Determination Regarding Plaintiff's Ability To Perform His Past Relevant Work</u>.**

Unless a claimant's prior work constituted "substantial gainful activity," the work cannot qualify as "past relevant work."  *See* 20 C.F.R. § 416.965(a); <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1051 (9th Cir. 2001).  At step four, the plaintiff bears the burden of showing that he does not have the residual functional capacity to engage in any of his past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  Generally, a vocational expert's opinion regarding a claimant's ability to perform

---

[9]   Although plaintiff has been treating consistently with Dr. Alfonso since November 2006, it appears that plaintiff's primary course of treatment involves medication maintenance and refills.  The treating records do not reflect any comprehensive psychiatric and/or psychological testing and/or results.  Plaintiff's most recent comprehensive psychiatric examination was in October 2002, nearly seven years ago.  (A.R. 104-10.)

17

his past relevant work, without specifying whether such finding is based on the claimant's ability to perform his actual prior job or the prior job as it is generally performed, is sufficient for a step four finding. Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001)("We have never required explicit findings at step four regarding a claimant's past relevant work both as generally performed and as actually performed. The vocational expert merely has to find that a claimant can or cannot continue his or her past relevant work as defined by the regulations. . . .")(citations omitted).

Plaintiff contends that the ALJ failed to describe properly the physical and mental demands of plaintiff's past work as a *machinist* "as actually performed." (J.S. at 10-12.) Specifically, plaintiff argues that "[b]y not exploring whether [p]laintiff's most recent work [as a machinist] involved that of a 'sheltered workshop' [p]laintiff has been done a miss-service [*sic*]." (J.S. at 11.)[10]

---

[10]    At step four, the ALJ found that plaintiff has:

> never had any medically determinable exertional limitations and that he has, and never lost for any significant period of time, the residual functional capacity to understand, remember, and carry out moderately complex, four to five step, instructions in an object oriented work setting allowing face-to-face instruction, habituated tasks, no variability in problem solving or routine on a regular basis, no responsibility for hypervigilance in the context of safety operations, only occasional changes in work setting, use of a hearing aide, talking to [plaintiff] in a louder than normal level, and no constant communication with others.

(A.R. 220.)  Based on this residual functional capacity finding and testimony from a vocational expert, the ALJ concluded that plaintiff could perform his past relevant work as a cleaner, and mentioned in passing that plaintiff's work "as a machinist" was "beyond the range of the residual functional capacity found herein above." (A.R. 221-22, 364-65.)  The vocational expert testified that plaintiff cannot perform his past work as a machinist, because it is a "skilled position" beyond

18

Given that the ALJ questioned that plaintiff's past work as a machinist constituted "substantial gainful activity" and finding that, in any event, it was "beyond the range of [plaintiff's] residual functional capacity" (A.R. 217-18, 221), the Court is inclined to find plaintiff's contention to be without merit. However, in view of the Court's conclusion that clarification of plaintiff's treating psychologist and psychiatrists' opinions is warranted, and that a consultative psychiatric examination may also be appropriate, the ALJ's ultimate residual functional capacity assessment *may* change on remand. Consequently, the Court cannot, and does not, undertake an analysis regarding the propriety of the ALJ's step four determination at this time.

## IV.   **Remand Is Required.**

Here, remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors. *See, e.g.,* Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(remand for further proceedings is appropriate if enhancement of the record would be useful); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989)(remand appropriate to remedy defects in the record).

---

his residual functional capacity. (A.R. 365.) *See also* the Dictionary of Occupational Titles, which defines the job of a machinist (No. 616.380-018) as skilled work, and the job of a cleaner (No. 381.687-014) as unskilled work. Plaintiff contends that there remains some question as to whether plaintiff actually worked as a full-time, skilled machinist, because he "earned around $11,000 [in 2004], which in and of itself raises a flag, because that would . . . equate to . . . around $6.25 per hour[, which is] not what a skilled machinist with [p]laintiff's alleged experience would command in earnings." (J.S. at 10.) In view of the ALJ's determination that plaintiff did not have the capacity to work as a machinist, this issue is moot.

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 30, 2009

_____/s/_____
                        MARGARET A. NAGLE
                 UNITED STATES MAGISTRATE JUDGE

20